IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBIN ROY SMITH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>ACTING COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil Action No. 14cv313E |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this  31st  day of March, 2016, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 15) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 18) be, and the same hereby is, denied. The Commissioner's decision of June 24, 2013, will be reversed and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant *sentence 4* of 42 U.S.C. §405(g).

A reviewing court is bound to the Commissioner's findings of fact if they are supported by substantial evidence even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by the substantial evidence standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting* Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (*quoting* Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed his pending applications for disability insurance benefits and supplemental security income on June 15, 2011, and July 19, 2011, respectively, both alleging a disability onset date of March 17, 2009, due to knee pain, depression, high cholesterol and diabetes. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a video hearing on November 14, 2012, at which plaintiff, represented by counsel, appeared and testified. On June 24, 2013, the ALJ issued a decision finding that plaintiff is not disabled. On October 21, 2014, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 49 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). He has a ninth grade education, which is classified as limited. 20 C.F.R. §§404.1564(b)(3) and 416.964(b)(3). Plaintiff has past relevant work experience as a truck driver, but he has not engaged in any substantial gainful activity since his alleged onset date.

After reviewing plaintiff's medical records and hearing plaintiff's testimony, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although plaintiff has the severe impairments of left knee degenerative changes, diabetes, sleep

apnea, pulmonary disease and obesity, those impairments, alone or in combination, do not meet or medically equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to engage in work at the sedentary exertional level "in a work environment without excessive dust, fumes and extremes of temperatures." (R. 28). In lieu of vocational expert testimony, the ALJ relied on SSR 85-15 and Medical-Vocational Rule 201.19 of Appendix 2 to 20 C.F.R., Part 404, Subpart P, as a framework to direct a finding that plaintiff is not disabled.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[1] 20 C.F.R. §§404.1520 and 416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 540 U.S. 20 (2003).

---

[1] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003).

AO 72
(Rev. 8/82)

Here, plaintiff raises several challenges to the ALJ's finding of not disabled: (1) the ALJ's residual functional capacity finding failed to accurately characterize the extent of plaintiff's environmental restrictions; (2); the ALJ erroneously relied on the Medical-Vocational guidelines ("the grids") and SSR 85-15 in finding plaintiff not disabled; and, (3) the ALJ erroneously applied the grids mechanically in a borderline age situation. Upon review, the court finds that the ALJ's residual functional capacity finding is not supported by substantial evidence, that the ALJ improperly relied on SSR 85-15 in lieu of vocational expert testimony at step 5, and that he mechanically applied the grids without taking into consideration plaintiff's borderline age.[2] All of these errors necessitate a remand.

Plaintiff's first argument is that the ALJ's residual functional capacity ("RFC") finding[3] inaccurately characterizes the extent of plaintiff's environmental restrictions as found by his treating pulmonologist, Dr. Frank Arnal, who treated plaintiff for chronic obstructive pulmonary disease and obstructive sleep apnea. The court agrees.

---

[2] The court has considered two additional arguments raised by plaintiff and finds them to be without merit. Specifically, the court is satisfied that the ALJ adhered to the appropriate standards in evaluating plaintiff's subjective complaints of pain and limitations in accordance with 20 C.F.R. §§404.1529(c) & 416.929(c) and SSR 96-7p, and that his credibility finding is adequately explained and supported by substantial evidence. (R. 29-33). It also is clear from the ALJ's decision that he complied with SSR 02-1p and considered plaintiff's severe impairment of obesity at step 3 of the sequential evaluation process and also when assessing plaintiff's residual functional capacity. (R. 27). The ALJ's evaluation of plaintiff's obesity likewise is supported by substantial evidence. *See* Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005)(ALJ's reliance on medical evidence from sources who were aware of claimant's obesity but did not mention obesity as contributing to any limitations was "satisfactory, if indirect" consideration of evidence even where ALJ did not even mention obesity in decision).

[3] Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by his impairments. Fargnoli, 247 F.3d at 40; 20 C.F.R. §§404.1545(a)(1); 416.945(a)(1). Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work-setting on a regular and continuing basis, which means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. In assessing residual functional capacity, the ALJ is to consider all of the relevant medical and other evidence in the case record in determining the individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§404.1545(a)(3)-(4); 416.945(a)(3)-(4); SSR 96-8p.

In a pulmonary impairment questionnaire, Dr. Arnal opined that plaintiff is limited in his ability to work at a regular job on a sustained basis by the need to avoid wetness, odors, fumes, temperature extremes, humidity, dust, perfumes, gases, solvents/cleaners, cigarette smoke, soldering fluxes and chemicals. (R. 319-20). In his decision, the ALJ acknowledged Dr. Arnal's opinion that plaintiff "would need to avoid wetness, odors, fumes, temperature extremes, humidity and dust" and that "[t]hese assessed restrictions fall within the area of expertise of a pulmonologist, especially one who has maintained a treating relationship" with plaintiff. (R. 33). Accordingly, the ALJ determined that Dr. Arnal's opinion regarding environmental restrictions was entitled to "significant weight." (R. 33).

Although the ALJ explicitly stated that he was incorporating Dr. Arnal's environmental restrictions into the RFC finding, his actual RFC finding merely limits plaintiff to a work environment "without *excessive* dust, fumes and extremes of temperatures." (R. 28). There is no mention in the RFC finding as to any of the other environmental restrictions that Dr. Arnal advanced regarding wetness, odors, fumes, humidity, perfumes, gases, solvents/cleaners, cigarette smoke, soldering fluxes and chemicals, nor does the ALJ offer an explanation as to why the RFC finding merely limits plaintiff's exposure to "excessive" dust, fumes and extremes of temperature, when Dr. Arnal indicated that plaintiff was to avoid them.

The Commissioner attempts to brush aside these inconsistencies by arguing that the ALJ is not required to incorporate into the RFC finding every single limitation advanced by a medical source, Wilkinson v. Commissioner of Social Security, 2014 WL 840925 (3d Cir., March 5, 2014), and that it is the function of the ALJ alone to determine a claimant's RFC. *See* 20 C.F.R. §§404.1527(d) and 416.927(d); SSR 96-5p (the opinion of any physician, including a treating physician, on the issue of RFC never is entitled to special significance).

While the Commissioner's premise is true, it equally is true that the ALJ's RFC finding must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 577 F.3d at 41 (citation omitted). Moreover, the ALJ must give some indication of the evidence that he rejects and his reasons for discounting that evidence. Fargnoli, 247 F.3d at 43.

Here, the ALJ did not indicate that he was rejecting any of the restrictions advanced by Dr. Arnal, but to the contrary expressly stated that he was giving Dr. Arnal's opinion significant weight and that he was incorporating those environmental restrictions into the RFC finding. Moreover, it is unclear why the ALJ decided to limit plaintiff's exposure to "excessive" dust, fumes and extremes of temperature, when Dr. Arnal's opinion was that plaintiff was to avoid those irritants. Because the ALJ failed to incorporate into the RFC finding the environmental restrictions advanced by Dr. Arnal, and failed to offer any explanation for the inconsistencies between Dr. Arnal's opinion and the RFC finding, this case must be remanded for clarification.

Plaintiff's second argument is that the ALJ improperly found him not disabled at step 5 without taking vocational expert testimony to evaluate the impact of plaintiff's environmental restrictions on his ability to perform substantial gainful activity. Upon review, the court agrees and finds that the ALJ improperly relied on the grids and SSR 85-15 in finding plaintiff not disabled.

At step five of the sequential evaluation process, the burden shifts to the Commissioner to show that other jobs exist in significant numbers in the national economy that the claimant can perform consistent with her medical impairments, age, education, past work experience,

AO 72
(Rev. 8/82)

and residual functional capacity. 20 C.F.R. §§404.1520(g); 416.920(g); Johnson v. Commissioner of Social Security, 529 F.3d 198, 205 (3d. Cir. 2008).

The grids set out various combinations of age, education, work experience and residual functional capacity and direct a finding of disabled or not disabled for each combination. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2. When the four factors in a claimant's case correspond exactly with the four factors set forth in the grids, the ALJ must reach the result the grids reach. Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000); 20 C.F.R. §§404.1569 and 416.969; 20 C.F.R., Part 404, Subpart P, Appendix 2, §200.00.

However, when not all of the factors pertaining to a claimant's case correspond with a particular grid rule, or when non-exertional limitations are present, the grids may be used as a framework for decision-making. Id. Where a claimant has non-exertional impairments, the Third Circuit Court of Appeals has held that "in the absence of a rulemaking establishing the fact of an undiminished occupational base, the Commissioner cannot determine that a claimant's non-exertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact (and providing the claimant with an opportunity to counter the conclusion)." Sykes, 228 F.3d at 261.

Here, the ALJ used grid rule 201.19 as a framework for his decision,[4] then relied on SSR 85-15[5] in concluding that plaintiff's non-exertional environmental limitations "have little

---

[4] Grid rule 201.19 directs a finding of not disabled for a younger individual age 45-49 with a limited education, skilled or semi-skilled past work experience (regardless of transferability of skills) and a residual functional capacity for sedentary work.

[5] The purpose of SSR 85-15 is to explain how the regulations provide a framework for decisions concerning individuals who have only nonexertional limitations. SSR 85-15 provides examples of

AO 72
(Rev. 8/82)

or no effect on the occupational base of unskilled sedentary work." (R. 34). The court finds the ALJ's reliance on SSR 85-15 in this case unsupportable.

As an initial matter, the record is devoid of any indication that plaintiff was provided with advance notice of the ALJ's intent to rely on SSR 85-15 instead of calling a vocational expert. Neither the Hearing Notice (R. 75-99) nor the Notice of Hearing Reminder (R. 101-106) put plaintiff on notice that the ALJ did not intend to call a vocational expert at the hearing. The Third Circuit Court of Appeals has held that "[i]f an agency will rely on rules as a substitute for individualized determination, and thus relieve the agency from the burden of producing evidence, ... advance notice should be given." Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005). The court explained that "[w]hile the Agency can meet its burden by reference to a Ruling . . . nonetheless, the claimant should have the opportunity to consider whether [he] wishes to attempt to undercut the Commissioner's proffer by calling [his] own expert. Obviously, this requires notice in advance of the hearing." Id. at 407-408.

Where the Commissioner fails to notify a claimant in advance of a hearing, it is "appropriate to give close scrutiny to the ALJ's reliance on a Ruling as satisfying the Commissioner's burden at Step 5." Id. at 308; *see also* Meyler v. Commissioner of Soc. Sec., 238 Fed. Appx. 884, 890 (3d Cir. 2007) (close scrutiny of the ALJ's reliance on an SSR at step five is appropriate where the ALJ fails to provide advance notice to the claimant). Close scrutiny of the ALJ's step 5 finding here establishes that the ALJ's reliance on SSR 85-15 in this case was improper.

Generally, where a claimant suffers from only nonexertional limitations, an ALJ may under certain circumstances forego vocational expert testimony at step 5 and instead use the

---

nonexertional limitations, including environmental restrictions, and their effects on the occupational base.

AO 72
(Rev. 8/82)

grids as a framework for decision making while relying upon an SSR to determine a claimant's occupational job base. See Allen, 417 F.3d at 404. However, an ALJ may not rely on an SSR in summary fashion without explaining how a claimant's particular work-related limitations are addressed by a specific aspect of the Ruling. Id. Indeed, a "conclusory reference" to an SSR is insufficient. Id. at 406. Rather, the ALJ must explain the "'fit' between the facts of a given case, namely, the specific nonexertional impairments, and the way in which the Rule dictates that such nonexertional limitations impact the base." Id. Accordingly, if an ALJ wishes to rely on an SSR in lieu of vocational expert testimony, "it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." Id. at 407.

In this case, the ALJ recognized that SSR 85-15 provides that "where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.." (R. 35)(*citing* SSR 85-15). However, what the ALJ does not acknowledge is that SSR 85-15 also provides that "where a person can tolerate little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants and other potentially damaging conditions." Significantly, the Ruling expressly states that "where the environmental restriction falls between very little and excessive, resolution of the issue generally will require consultation of occupational reference materials or the services of a [vocational source]."

Here, as already discussed, the ALJ's RFC finding in regard to plaintiff's environmental restrictions is less than clear, and the extent of those restrictions is crucial to a determination of whether SSR 85-15 properly can be applied in this case. If, as Dr. Arnal's opinion seems to

AO 72
(Rev. 8/82)

suggest, plaintiff must avoid entirely environmental irritants, SSR 85-15 instructs that the impact on his ability to work would be considerable. If the extent of the environmental restrictions falls somewhere between very little and excessive, then the ALJ could not properly rely on SSR 85-15 by its very terms. In any event, particularly in light of the ALJ's inadequate RFC finding, the ALJ's reliance on SSR 85-15 in this case is not supportable. Accordingly, the court finds that the ALJ's step 5 finding is not supported by substantial evidence and this case must be remanded for that reason as well.

Plaintiff's final argument is that the ALJ improperly applied the grids in this case without taking into account that at the time of the ALJ's decision plaintiff was only 7 months from reaching an older age category under the regulations. As already noted, at the time of the ALJ's decision on June 24, 2013, plaintiff was 49 years old, which is classified as a younger person. 20 C.F.R. §§404.1563(c) and 416.963(c). Less than 7 months later, on January 14, 2014, plaintiff reached age 50, which is classified as a person closely approaching advanced age. 20 C.F.R. §§404.1563(d) and 416.963(d). Plaintiff argues that because he was in a borderline situation with respect to the age category, the ALJ should have addressed the issue rather than mechanically apply the grids as a framework to find him not disabled. Again, the court agrees with plaintiff.

The Regulations caution against mechanical application of the grids in a "borderline situation." Section 404.1563(b) and 416.963(b) provide in pertinent part:

> [w]e will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

If the ALJ does not properly apply §§404.1563(b) and 416.963(b), and if proper application of that regulation could change the ALJ's determination, the matter must be remanded for further consideration. Kane v. Heckler, 776 F.2d 1130, 1134 (3d Cir.1985).

Although there is no bright line test for determining what constitutes a "borderline situation," a number of courts have found that 7 months falls within the borderline category. *See, e.g.,* Istik v. Astrue, 2009 WL 382503 *4 (W.D.Pa., Feb. 13, 2009); Williams v. Bowen, 1987 WL 9148, *2 (E.D.Pa., April 6, 1987); *see also* Rosado v. Bowen, 1986 WL 15004, *4 (E.D.Pa. Dec.30, 1986)(9 months). *Cf.* Holland v. Commissioner of Social Security, 2012 WL 11052 (W.D.Pa., Jan. 3, 2012)(5 months would be outer limit of borderline situation).

Here, the court believes that the ALJ should not have applied the grids mechanically without giving consideration to plaintiff's borderline age situation because such an analysis could have changed the ALJ's determination. Under the grids, an individual closely approaching advanced age with a limited education and an RFC for sedentary work and whose past relevant work was either unskilled or skilled or semi-skilled, but with non-transferable work skills, is disabled under grid rules 201.09 or 201.10.[6] Accordingly, the ALJ's application of the grid rules mechanically in this borderline situation constitutes another error necessitating a remand. See Davis v. Astrue, 2009 WL 3241853, at *6-7 (W.D. Pa. Oct. 5, 2009)(case remanded where ALJ failed to address borderline age where consideration may have changed outcome).

---

[6] Only if plaintiff's past relevant work experience was skilled or semiskilled with *transferable* work skills would the grids dictate a finding of not disabled for the age category of closely approaching advanced age with plaintiff's limited education and RFC for sedentary work. Grid Rule 201.11. Because transferability of work skills is not material to whether a person in the younger age category is disabled under the grids, the ALJ did not make a determination on transferability. (R. 34).

Because the ALJ failed to adequately explain his residual functional capacity finding, improperly relied on SSR 85-15 and mechanically applied the grids in a borderline age situation, his step 5 finding that plaintiff is not disabled is not supported by substantial evidence. As a result, this case must be remanded to the Commissioner pursuant to sentence 4 of §405(g). On remand, the ALJ must clarify his RFC finding as it relates to plaintiff's environmental restrictions and explain how plaintiff's specific environmental restrictions impact his ability to perform substantial gainful employment. As stated by the Third Circuit, "[t]his can be accomplished by noting how SSR 85–15 is relevant and controlling—if indeed that is the case—or by obtaining the individualized assessment that SSR 85–15 seems to prefer by way of a vocational expert." Allen, 417 F.3d at 407. He must also take into consideration plaintiff's borderline age situation and make a determination as to the transferability of skills in regard to plaintiff's past relevant work.

Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

        s/Gustave Diamond
        Gustave Diamond
        United States District Judge

cc:   Beth Arnold, Esq.
      Binder and Binder
      526 Hamilton Road
      Merion, PA 19066

      Marshall J. Piccinini
      Assistant U.S. Attorney
      Room A330
      17 South Park Row
      Erie, PA 16501